T.C. Summary Opinion 2006-179


UNITED STATES TAX COURT


GARY AND CYNTHIA STEIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23179-04S.                    Filed November 2, 2006.


Gary and Cynthia Stein, pro sese.

<u>Carolyn E. Moran</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 in effect when the petition was
filed.[1]  The decision to be entered is not reviewable by any
other court, and this opinion should not be cited as authority.
This case arises from a petition for judicial review filed in

_____

    [1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code, as amended.

response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 issued for unpaid Federal income tax liabilities for taxable years 1994 and 2002.[2]

The sole issue for decision is whether respondent abused his discretion in sustaining a Notice of Federal Tax Lien.  For the following reasons, we hold that there was no abuse of discretion in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Egg Harbor City, New Jersey, on the date the petition was filed.

## Prior Assessments and Offer-in-Compromise

Respondent assessed a Federal income tax liability of $28,222.27 against petitioners for taxable year 1993 on August 7, 1995.  Respondent also assessed a Federal income tax liability of $19,934.61 against petitioners for taxable year 1994 on July 31, 1995.  The total amount assessed for petitioners' 1993 and 1994 Federal income tax liabilities was $48,156.88.

Petitioners made an Offer-in-Compromise (OIC) for the Federal income tax liabilities assessed for the 1993 and 1994

---

[2]Petitioners' liability for the taxable year 2002 has been satisfied and is no longer in issue.

taxable years.  The OIC provided that petitioners would pay $32,000 to satisfy these liabilities, with $27,000 to be initially deposited upon respondent's acceptance of the OIC, and $5,000 to be paid 6 months after respondent's notice of acceptance.  As part of the OIC, petitioners were to "comply with all provisions of the Internal Revenue Code relating to the filing [of] returns and paying [of] required taxes for five (5) years from the date IRS accepts the offer."  Petitioners signed the OIC on January 30, 1997.

Respondent accepted petitioners' OIC by return letter dated March 28, 1997.  In his acceptance letter, respondent provided that "the conditions of the offer require [petitioners] to file and pay all required taxes for five years from the date shown in the upper right corner of this letter."  To avoid default on the OIC, petitioners were required to timely file and pay their taxes through March 28, 2002.

Over the next 5 years, petitioners either did not timely file, and/or did not timely pay, and/or failed to report all of their income on their Federal tax returns.

1.  <u>Taxable Year 1997</u>

Petitioners failed to report all of their income on their 1997 Federal income tax return.  Respondent issued a notice of deficiency for taxable year 1997, which petitioners subsequently defaulted.  As a result of the default, respondent assessed an

additional tax of $5,642.  The assessment included an accuracy-related penalty pursuant to section 6662, a failure to pay addition to tax pursuant to section 6651(a)(2), and interest for taxable year 1997.

2.  Taxable Year 1998

For the taxable year 1998, petitioners timely filed their Federal income tax return but failed to report all of their income and pay their full tax liability by the filing due date. Respondent issued a notice of deficiency for taxable year 1998, which petitioners subsequently defaulted.  As a result of the default, respondent assessed an additional tax of $12,208. Petitioners were also assessed a dishonored check penalty, an accuracy-related penalty pursuant to section 6662, a failure to pay addition to tax pursuant to section 6651(a)(2), and interest. Petitioners' 1998 tax liability was ultimately paid on June 12, 2003.

3.  Taxable Year 1999

For the taxable year 1999, petitioners failed to timely pay their tax liability.  Petitioners were assessed a deficiency, an addition to tax pursuant to section 6651(a)(2), and interest for the taxable year 1999.  Petitioners' 1999 tax liability was ultimately paid on June 26, 2000.

4. <u>Taxable Year 2000</u>

For the taxable year 2000, petitioners failed to pay their tax liability by the filing due date. Petitioners were liable for a failure to pay addition to tax pursuant to section 6651(a)(2), a failure to pay estimated tax addition to tax pursuant to section 6654(a), and interest for the taxable year 2000. Petitioners' 2000 tax liability was ultimately paid on May 14, 2004.

5. <u>Taxable Year 2001</u>

For the taxable year 2001, petitioners failed to timely file and pay their estimated tax liability. Accordingly, petitioners were assessed an addition to tax pursuant to section 6651(a)(1), a failure to pay addition to tax pursuant to section 6651(a)(2), a failure to pay estimated addition to tax pursuant to section 6654(a), two dishonored check penalties, and interest.

In summary, petitioners did not comply with the provisions of the Internal Revenue Code pertaining to the filing of returns and paying of Federal income taxes for 1997, 1998, 1999, 2000, and 2001 as required by the OIC.

<u>Change of Residential Address</u>

Petitioners moved from Lynwood, New Jersey, to Egg Harbor City, New Jersey, in May 2000. Petitioners' address was changed in respondent's records to Egg Harbor City, New Jersey, sometime in the first week of April 2001.

Collection Actions

Although petitioners paid $27,000 when respondent accepted the OIC, petitioners did not make any further payment under the terms of the OIC; namely the $5,000 payment due on September 27, 1997. The record indicates that the $27,000 paid was applied to amount of the OIC total attributable to taxable year 1993. This application resulted in the settlement of the 1993 taxable year. However, because petitioners did not remit the remainder of the OIC amount, a liability for taxable year 1994 remained.

On October 6, 1997, respondent sent petitioners a letter that applied interest on the unpaid portion of their income tax liability stemming from taxable year 1994. On May 4, 1998, respondent assessed a deficiency of $12,525.27 for taxable year 1994.

As previously discussed, petitioners did not timely file, timely pay, and/or fully report their income for taxable years 1997, 1998, 1999, 2000, and 2001. Although respondent's Collections personnel were in contact with petitioners regarding their outstanding liabilities for these years, the personnel did not revisit the unpaid portion of the 1994 assessment until early 2001.

On May 1, 2001, and August 31, 2002, respectively, respondent sent petitioners letters warning them that if they did not become compliant with the unpaid liability for taxable year

1994, the original amount of their income tax liability for 1994--$19,934.61--would be reinstated. On February 7, 2003, respondent sent petitioners a letter of default for the taxable year 1994.

Respondent filed a Notice of Federal Tax Lien on April 29, 2004, showing $12,525.27 owed for taxable year 1994, and $332.94 owed for taxable year 2002.

Petitioners requested a Collection Due Process (CDP) Hearing on May 11, 2004. The CDP Hearing occurred in Baltimore, Maryland, on October 12, 2004. At the Hearing, petitioner husband requested that the terms of the original OIC be reinstated. He did not recommend or propose an alternative collection means. Respondent determined that issuance of a Notice of Federal Tax Lien would be justified, since petitioners defaulted on the OIC when they failed to timely file and pay their Federal income taxes for 1997, 1998, 1999, 2000, and 2001.

On November 5, 2004, respondent issued petitioners a Notice of Determination Concerning Collection Action(s) pursuant to section 6320 and/or 6330, in which respondent determined the Notice of Federal Tax Lien for taxable years 1994 and 2002 to be proper and determined that collection of the tax liabilities for those years should proceed.

Petitioners filed a Petition for Redetermination of a Deficiency[3] requesting the elimination of penalties and interest for their 1994 tax liability, and concurrent restoration of the terms of the defaulted OIC.  The trial occurred on November 1, 2005.

## Discussion

Before a Federal tax lien is filed with regard to any property or right to property, taxpayers are entitled to notice and opportunity for a hearing before an impartial officer of the respondent's Office of Appeals.  Secs. 6320(a) and (b), 6330(b)(3).  If the taxpayers request a hearing, they may raise in that hearing any relevant issue relating to the unpaid tax or the proposed lien, including challenges to the appropriateness of the collection action and "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise".  Secs. 6320(c), 6330(c)(2)(A).  A determination is then made which takes into consideration those issues, the verification that the requirements of applicable law and administrative procedures have been met, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person

---

[3]On the petition, petitioners should have placed an "X" in the box entitled Petition for Lien or Levy Action (Collection Action), as this is not a deficiency case.

that any collection action be no more intrusive than necessary".
Sec. 6330(c)(3)(C). At the CDP hearing, petitioners did not
argue that any portion of their outstanding tax liability for
1994 is uncollectible. Because petitioners do not dispute the
underlying tax liability, we review respondent's determination
for an abuse of discretion. Sec. 6330(d); Goza v. Commissioner,
114 T.C. 176, 181-182 (2000). An abuse of discretion occurs when
the Commissioner takes action that is arbitrary or capricious,
lacks a sound basis in law, or is not justifiable in light of the
facts and circumstances. Mailman v. Commissioner, 91 T.C. 1079,
1084 (1988).

Petitioners argue that respondent's actions amounted to an
abuse of discretion because petitioners were not notified of
their default, and respondent's Appeals officer unreasonably
denied petitioners' request at the CDP hearing that the terms of
the underlying OIC be reinstated. For the reasons stated below,
we find that there was no abuse of discretion in this case.

Notice of Default

Petitioners assert that respondent did not provide them with
notice of default before a Notice of Federal Tax Lien was issued.
The OIC Case history shows that when petitioners failed to pay
the $5,000 due on September 27, 1997, the Commissioner's
collections personnel contacted petitioners by letter dated
October 6, 1997, whereby the Commissioner applied interest of

$168.02 to the unpaid liability stemming from taxable year 1994. The OIC Case history shows that while respondent's collections personnel did not contact petitioners about petitioners' unpaid liability for taxable year 1994 until early 2001, the collections personnel were in contact with petitioners between 1997 and 2001 regarding their unpaid tax liabilities stemming from taxable years 1997, 1998, and 1999.

Regarding the outstanding assessment for 1994, respondent attempted to contact petitioners by telephone no less than 10 separate times between 2001 and 2004.  Respondent also sent petitioners three letters; in two of these letters, he warned petitioners of default, and in the third, he notified petitioners of default.

The OIC Case history Listing is replete with notations that respondent's Collections employees and managers reviewed petitioners' record for taxable year 1994 for payments, received approval to proceed with collections, and attempted contact with petitioners when no payments were received.  Accordingly, we conclude that the review undertaken by respondent's employees in this case was as thorough and complete as possible given petitioners' noncompliance with the 5-year timely filing and paying requirement imposed by the OIC, and the inability of respondent's employees to contact petitioners.

With respect to the issue of notice before filing of the Federal Tax Lien, the Internal Revenue Manual, sec. 5.12.1.3, provides that reasonable efforts be made to contact the taxpayer before filing. However, there are no specific requirements provided in the Manual, or under the law, that the Commissioner must send a warning default letter when the taxpayers have not complied with the terms of an underlying OIC.

In this case, respondent sent petitioners two letters warning them of default on the OIC for the taxable year 1994. Petitioners testified that they had not received either of the two default warning letters sent by respondent on May 1, 2001, and August 31, 2002, or the letter of default dated February 7, 2003. All three letters were sent to petitioners' address in Egg Harbor City, New Jersey, and petitioners moved to the Egg Harbor City, New Jersey, address in May 2000. Petitioners testified that the first time they became aware that they had defaulted on the OIC was when respondent issued them a Notice of Federal Tax Lien on April 29, 2004.

When questioned by the Court, petitioners admitted that there were "warnings" that they had defaulted on the OIC. We find that based on the OIC Case history, the "warnings" received by petitioners included both the aforementioned letters and phone conversations. Moreover, we find that petitioners not only had warning and notice of their default through three letters and

phone conversations, but that they were aware from the date they signed the OIC that any noncompliance on their part with the 5-year timely filing and payment requirement would immediately result in default of the OIC.

Collection Due Process Hearing

The only argument set forth in the petition was that "all legal and procedural requirements [with respect to the CDP hearing] were not met." Section 6320 requires that the Commissioner give notice to taxpayers in writing within 5 days after the filing of the Notice of Federal Tax Lien of the taxpayers' right to request a hearing with Appeals if the request is made during the 30 days following the end of the 5-day notification period. In this case, respondent sent petitioners the Notice of Federal Tax Lien together with the Notice of Petitioners' Right to Request a Hearing on May 4, 2004. Petitioners requested a hearing on May 20, 2004. Accordingly, we find that all procedural requirements with respect to the notice of the lien and the CDP hearing were timely met.

At the CDP hearing, petitioner husband requested relief from paying the outstanding amount due for taxable year 1994 under the original OIC. Petitioner husband presented no other collection alternatives to this request. Petitioner husband's singular argument at the CDP hearing was that he had not received notice of default, and that he had no notice until receiving the Notice

of Federal Tax Lien that he was in danger of default.  As previously stated, we find that petitioners were in receipt of written and verbal notice of their default.  Moreover, we find that petitioners were aware that their repeated noncompliance with the 5-year timely filing requirement placed them in default on the underlying OIC.

We therefore cannot conclude that respondent acted in an arbitrary or capricious manner based on the facts of this case. Petitioners were well aware of their duty to timely file and pay their taxes for the 5 years following respondent's acceptance of the underlying OIC.  Petitioners not only failed to timely file their 1997 Federal tax return; they failed to timely file in each and every one of the 5 years of the OIC compliance period. Moreover, respondent attempted on 10 occasions over 3 years to contact petitioners at their Egg Harbor residence to craft a resolution to petitioners' outstanding liability stemming from taxable year 1994.  In these years, respondent attempted to work with petitioners, despite their repeated failures to timely file. Petitioner husband, by his own admission, testified that petitioners did not respond to these attempts because they "lacked the money to pay."  Petitioners then begged this Court to consider that they are "desperate" because they cannot afford to pay the amount now sought by respondent with respect to 1994.

We find that respondent made repeated efforts to work with petitioners after they had defaulted on the underlying OIC.  We further find that although petitioners were aware that their failure to timely file just once in the 5-year compliance period would result in default, and that they were aware through phone calls and correspondence from respondent about the default, they chose to disregard the results of their noncompliance until the time of the CDP hearing.

We therefore hold that respondent's determination sustaining the Notice of Federal Tax Lien was not an abuse of discretion and that respondent may proceed with collection by Federal Tax Lien of petitioners' liability stemming from taxable year 1994.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.